IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| KENYA MILLER, individually, and as p/n/g of TROY ALLEN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 10-6915 |
| v. | : | |
| | : | |
| PHILADELPHIA POLICE OFFICER MICHAEL O'NEILL, Badge #243698 and PHILADELPHIA POLICE OFFICER MICHAEL RAKAY and PHILADELPHIA POLICE OFFICER LAZARDE and PHILADELPHIA POLICE OFFICER WEBB Badge #4062 and PHILADELPHIA POLICE OFFICER MURRAY Badge #6649 and PHILADELPHIA POLICE OFFICER BLAKE Badge #4321 and PHILADELPHIA POLICE OFFICER ROSENBAUM Badge #9463 and PHILADELPHIA POLICE OFFICER DEMPSEY Badge #1577 and PHILADELPHIA POLICE OFFICER PONE Badge #6978 and PHILADELPHUA POLICE OFFICER FEENEY Badge #3444 and PHILADELPHIA POLICE OFFICER WELCH Badge #3966 and PHILADELPHIA POLICE OFFICER BEDNARZ Badge #7736 and PHILADELPHIA POLICE OFFICER AMMOUNE Badge #4509 and PHILADELPHIA POLICE OFFICER MORRING Badge #7619 and THE CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

_____

**DuBois, J.**                                                                                              **March 21, 2013**

# M E M O R A N D U M

**I.     INTRODUCTION**

In this case, plaintiff Kenya Miller – individually, and as parent and guardian of her minor son, Troy Allen – alleges that fourteen police officers of the City of Philadelphia and the City of Philadelphia itself violated her civil rights by using excessive force during an arrest.[1] Miller contends that she and her minor son sustained various injuries as a result of the arrest and that it was the policy or custom of the City to tolerate and encourage through deliberate indifference and inadequate training the unconstitutional use of excessive force by the City's police officers in making arrests.  Miller's claims are based on 42 U.S.C. § 1983 and Pennsylvania state law torts.  Ten defendant officers who were not involved in Miller's arrest and the City have moved for summary judgment. Miller does not oppose the granting of the motion with respect to the ten officers.  The officers involved in the arrest have not moved for summary judgment.  This Memorandum addresses the City's motion for summary judgment.  For the reasons that follow, that motion is granted.

**II.    BACKGROUND[2]**

This case arises out of the arrest of Kenya Miller and her son, Troy Allen.  Their arrest stems from a traffic stop that occurred earlier that night.  Allen was in a car along with two

---

[1] Miller filed complaints on behalf of herself and as parent and natural guardian of her minor son Allen.  By Order dated April 27, 2011, the cases were consolidated for all pretrial proceedings and a possible consolidated trial. (Document No. 13.)  The Court will thus refer to Miller as a single Plaintiff despite her dual capacities.

[2] The facts are presented in the light most favorable to Miller, the non-moving party.

siblings – a brother and sister who are related to one of Allen's friends. (Allen Dep. at 18.) Their car was stopped by Officer Jonathan Lazarde. (Id. at 20.) During the stop, the brother ran away, and Officer Lazarde gave chase. (Id. at 22-25.) While Lazarde was pursuing the brother, the sister drove Allen home. (Id.)

Upon returning home, Allen realized that he was missing his cell phone. (Id. at 25.) Allen called his cell phone and it was answered by Officer Lazarde, who had recovered the phone and then posed as the brother, making arrangements to meet Allen at Olney Plaza to return the cell phone. (Id. at 26.) Miller accompanied her son Allen to the plaza due to the late hour. (Miller Dep. at 34.)

When Miller and Allen arrived at the plaza, they were met by Officer Lazarde, Officer Rosenbaum, Officer Dempsey, and Supervisor Sergeant Medycki. (Rosenbaum Dep. at 7-9; Dempsey Dep. at 22-24.) Officer Lazarde arrested Allen and placed him in the backseat of a patrol car. (Id. at 36, 41; Allen Dep. at 27.) After failing to receive an explanation for why her son was being arrested, Miller opened the patrol car door to ask Allen about the arrest. (Miller Dep. at 40-44.) At this point, Miller claims that Officer Lazarde struck her in the eye and then, with several other officers, beat her for approximately five minutes while she was on the ground. (Id. at 47-52; Allen Dep. at 51-53.) As Miller was being arrested, Allen opened the patrol car door and fled the scene, but he was quickly cut off by another patrol car and handcuffed by an officer. (Allen Dep. at 30, 55-58; Miller Dep. at 46-47, 54-57.) Miller claims that Allen also was beaten and kicked repeatedly on the ground by several police officers. (Allen Dep. at 55-58.) Miller and Allen were subsequently taken to Albert Einstein Medical Center for treatment of the injuries sustained during their arrests. (Miller Dep. at 58.)

A Use of Force Report was not filed with the police department in connection with these arrests. (Murray Dep. at 15.) Plaintiff did not introduce evidence or provide testimony concerning when Use of Force Reports are to be completed by police officers. Officer Murray stated at his deposition that he believed a Use of Force Report should have been completed based on Allen's injuries. (Id.) Officers Webb and Murray, who were not involved in the arrest, also stated at their depositions that Officer Lazarde and Officer Rosenbaum had reputations for using excessive force during arrests. (Webb Dep. at 11-18, Murray Dep. at 5-6.)

Miller sued fourteen police officers and the City. Eleven of these officers were not involved in the arrest and Miller has agreed not to pursue her claims against them. They are: Officers Webb, Blake, Murray, Pone, O'Neill, Ammoune, Welch, Bednarz, Feeney, Morring, and Rakay.[3] The remaining three defendant officers who were involved in the arrest have not moved for summary judgment. They are: Officers Lazarde, Rosenbaum, and Dempsey. All that remains at issue is the City's motion for summary judgment covering Miller's § 1983 claims.

## III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676

---

[3] Ten of these officers moved for summary judgment: Officers Webb, Blake, Murray, Pone, O'Neill, Ammoune, Welch, Bednarz, Feeney, and Morring. Miller agreed to the granting of summary judgment as to all claims asserted against these ten moving officers. (Resp. at 5.) Miller further agreed to dismiss all claims against non-moving defendant, Officer Rakay. (Id.)

4

F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

Plaintiff asserts a § 1983 claim against the City based on an unofficial policy or custom of tolerating, condoning, and being deliberately indifferent to the unconstitutional use of excessive force by its police officers. Plaintiff also asserts that the City inadequately supervised and trained its officers.

The liability of a municipality under 42 U.S.C. § 1983 is governed by Monell v. Department of Social Services, 436 U.S. 658 (1978). Under Monell, municipalities are "included among those persons to whom § 1983 applies." Id. at 690. Municipalities, however, cannot be found liable under the doctrine of *respondeat superior* for claims based on federal civil rights statutes. Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). For the municipality to be found liable, "those whose edicts or acts may fairly be said to represent official policy" must adopt a "policy or custom" causing an actionable § 1983 injury.

Monell, 436 U.S. at 694; see also Board of County Comm'rs of Bryan County, 520 U.S. at 403; City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). A municipal "policy" may arise from the "decisions of [a municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Board of County Comm'rs of Bryan County, 520 U.S. at 403-04. A municipal "custom" is a practice that is "so widespread as to have the force of law," though the practice "has not been formally approved by an appropriate decisionmaker." Id. at 404.

After establishing that a government policy or custom exists, a plaintiff must satisfy the causation requirement by demonstrating that the municipality's deliberate conduct was the "'moving force' behind the injury alleged." Id. "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. If the alleged municipal action does not facially violate federal law, a plaintiff must demonstrate that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Berg, 219 F.3d at 276 (quoting Board of County Comm'rs of Bryan County, 520 U.S. at 407); see also City of Canton, 489 U.S. at 389. "A showing of simple or even heightened negligence will not suffice." Board of County Comm'rs of Bryan County, 520 U.S. at 407.

For a failure to train claim, a plaintiff must provide evidence that the alleged failure to train has caused a "pattern of violations." Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010). If a plaintiff cannot show such a pattern, she "must show that a violation of federal

rights was a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Id. (citations and quotations omitted); Berg, 219 F.3d at 276.

The City argues that Miller has provided no evidence of a conscious decision or the deliberate indifference of a high-level official to support her claims against the City under Monell. Miller responds that her claim survives summary judgment because (A) the City allowed certain police officers' use of excessive force to continue despite being aware of the propensity of these officers to engage in such unconstitutional conduct, (B) a Use of Force Report was not filed in response to Miller's arrest, and (C) Supervisor Sergeant Medycki participated in the assault. The Court rejects these arguments and grants the City's motion for summary judgment.

  A.  Propensity of Police Officers to Use Excessive Force

Miller first contends that the City was aware of the propensity of certain police officers to use unlawful force, but, despite this knowledge, the City allowed the officers' behavior to continue. She relies on the statements of two police officers who assert that Officers Lazarde and/or Rosenbaum had reputations for improper treatment of arrestees and for using excessive force. Miller similarly claims that the stated reputations of those officers is evidence that the City had knowledge of ongoing civil rights violations and continued to inadequately supervise and train its police officers.

Plaintiff has failed to present evidence that either the City had "actual or constructive notice" that certain police officers had a history of using unlawful force or "that a particular omission in [the City's] training program cause[d] city employees to violate citizens'

7

constitutional rights." See Board of County Comm'rs of Bryan County, 520 U.S. at 407. A "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference" to the constitutional rights of its citizens. Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (internal quotations omitted). Miller has not shown such a pattern. She cites only the actions of the officers on the scene when she was arrested and statements regarding certain officers' reputations as evidence of a recurring situation. The statements regarding Officers Lazarde and Rosenbaum's reputations were made by other officers who do not possess final decision-making power for the City. Further, Miller has provided no evidence that there was any deficiency in the City's training or a lack of supervision that made it highly predictable that her constitutional rights would be violated. To allow the claim to go forward would impermissibly allow plaintiff to recover against the City on a "de facto respondeat superior liability" theory. See City of Canton, 489 U.S. at 392.

    B.    No Use of Force Report

The Court also rejects Miller's second argument that a Use of Force Report not being filed in response to plaintiff's arrest reveals an unofficial custom of the City to ignore complaints of excessive force against police officers. To prove the existence of a policy or custom, Miller relies upon the statement of a police officer who believed a Use of Force Report should have been completed after plaintiff's arrest. Miller, however, has not provided any evidence concerning when a Use of Force Report is required. Moreover, she has not provided any evidence that there is a policy, custom, or pattern of police officers failing to file Use of Force Reports; the only evidence presented on this issue is Officer Murray's testimony that a Use of Force Report may have been warranted after Miller's specific arrest. If anything, an officer's

recognition that a Use of Force Report should have been filed in this instance suggests that the City has a policy specifying when Use of Force Reports should be filed. An officer's failure to follow established procedures in this specific circumstance, without more, is insufficient to impose liability on the City. See Connick, 131 S. Ct. at 1363-64.

   C. Supervisor Sergeant Medycki's Participation in the Assault

Finally, Miller argues that because Supervisor Sergeant Medycki participated in the assault, it is the custom of the police department to condone and encourage the use of excessive force. For the City to be found liable, Miller must provide evidence of a municipal policymaker with final decision-making authority encouraging, tolerating, or ratifying unconstitutional conduct by the City's police officers. See Kelly, 622 F.3d at 264-65; Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996). Miller, however, fails to provide any evidence of high-level City officials with final decision-making authority condoning or encouraging the use of excessive force. There is no evidence that Supervisor Sergeant Medycki has or has been delegated such final decision-making authority, and thus the contention that Medycki's involvement in the arrest represents a custom or policy does not rise to the level necessary to impose liability on the City.

In sum, there is no evidence of a policy or custom on the part of the City that led to plaintiff's injuries. The Court thus grants the City's motion as it relates to the Monell claim.

**V. CONCLUSION**

There being no genuine dispute as to a material fact regarding the existence of a municipal custom or policy, deliberate indifference on the part of the City, or the City's failure to train and/or supervise its police officers, the City's motion for summary judgment is granted. The case shall proceed against the remaining named defendants: Philadelphia Police Officer

Lazarde, Philadelphia Police Officer Rosenbaum, and Philadelphia Police Officer Dempsey. An appropriate order follows.